UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS B. BLAIM,

                Plaintiff,                CIVIL ACTION NO. 12-14756

    vs.

                                  DISTRICT JUDGE AVERN COHN

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

                Defendant.
_____/

REPORT AND RECOMMENDATION

I.      RECOMMENDATION:  This Court recommends that Plaintiff's motion for summary judgment (docket no. 8) should be **DENIED**, Defendant's motion for summary judgment (docket no. 12) should be **GRANTED**, and Plaintiff's complaint should be dismissed.

II.     PROCEDURAL HISTORY:

      Plaintiff protectively filed an application for supplemental security income on May 17, 2010, alleging disability beginning June 28, 1998 due to chronic obstructive pulmonary disease ("COPD"), degenerative disc disease, and high blood pressure. (TR 118-21, 132, 136). The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing. On July 7, 2011 Plaintiff appeared with counsel in Livonia, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) Henry Perez, Jr. (TR 45-62). Vocational Expert (VE) John Stokes also appeared and testified at the hearing. In an August 23, 2011 decision the ALJ found that Plaintiff was not entitled to disability benefits because he remained capable of performing jobs that exist in significant numbers in the national economy. The Appeals Council declined to review the

ALJ's decision and Plaintiff filed a timely complaint for judicial review. The parties filed cross motions for summary judgment which are currently before the Court.

## III.    PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

### A.    Plaintiff's Testimony

Plaintiff was forty-one years old on his alleged onset of disability date and fifty-three years old on the date his application was filed. He attended high school and he received a GED. He testified that he lives in a home with his fiancee and he last worked in 1998.

Plaintiff reported that he has COPD, emphysema, fractures in his back and neck with nerve damage, pain radiating to his legs, left arm and finger numbness, and occasion difficulties with his shoulder and jaw locking up. (TR 48). He described his activities in a typical day to include "a lot" of sleeping, sitting at the computer, reading email, watering the garden, watching television, and taking frequent naps. Plaintiff testified that he takes two or three naps each day lasting approximately one hour to one hour and thirty minutes. (TR 53). He stated that he has no difficulty getting dressed with the exception that he gets winded putting his socks on and he is unable to tie his shoes. (TR 49). Plaintiff reported that he is able to do some cooking and limited shopping. He stated that he is unable to squat but he may be able to stoop and bend. He estimated that he can walk a city block before he needs to sit down to catch his breath, he can stand approximately thirty minutes at a time if he leans against something for support, he can sit for up to thirty minutes at a time, and he can lift approximately eight to ten pounds occasionally. (TR 50-51, 53). He reported that he drives but only for short distances. He also reported that he visits his cousin who lives across the street and he spends time with his parents, sister, and brother. (TR 51).

2

Plaintiff testified that he lives with a level seven pain every day. He stated that he takes Hydrocodone to help relieve the pain but finds that it causes drowsiness. (TR 54-55). He stated that the pain and/or medication make it hard for him to focus. In addition to the Hydrocodone, Plaintiff testified that he takes Lisinopril for blood pressure, Naproxen as an anti-inflammatory and pain reliever, a nebulizer, an Albuterol inhaler, and Advair. (TR 55). He stated that he smokes and drinks alcohol.

**B.     Medical Evidence**

The undersigned has thoroughly reviewed Plaintiff's medical record. In lieu of summarizing the medical record, the undersigned will make references and citations to the record as necessary in response to the parties' arguments.

**IV.     VOCATIONAL EXPERT TESTIMONY**

The VE testified that Plaintiff was a younger person on his alleged onset of disability date and a person closely approaching advanced age on the date his application was filed. (TR 58). The VE testified that Plaintiff's past work as a shuttle driver was semi-skilled labor customarily performed at a medium physical exertion level, but performed by Plaintiff at a sedentary level. The ALJ asked the VE to assume an individual of Plaintiff's age, education, work experience, and skill set who has the following limitations: (1) ability to lift twenty pounds occasionally and ten pounds frequently, (2) can stand, sit, and walk six hours with a sit/stand option, (3) occasional climbing, balancing, stooping, crouching, kneeling, and crawling, (4) must avoid concentrated exposure to respiratory irritants, and (5) limited to semi-skilled work. (TR 59). The VE testified that an individual with these limitations could not perform Plaintiff's past work as a shuttle driver, but could perform unskilled work as an information clerk, officer helper (DOT 239.567-010), and courier

(DOT 230.663-010), comprising 5,200 jobs in Michigan and 195,000 jobs nationally. (TR 59-61). The VE testified that no jobs would be available if Plaintiff's testimony was considered credible, as Plaintiff's need for naps would preclude competitive employment and his constant level seven pain would significantly erode his ability to attend and concentrate on normal work tasks during the course of an eight hour workday.

## V.       ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that while Plaintiff has not engaged in substantial gainful activity since the application date of May 17, 2010, and suffered from the severe impairments of degenerative disc disease, COPD, obesity and hypertension, he did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (TR 22-23). The ALJ found that Plaintiff retains the residual functional capacity (RFC) to lift up to ten pounds frequently and twenty pounds occasionally, and sit, stand, and walk each for up to six hours in a typical eight hour workday. He further found that Plaintiff is limited to jobs allowing him to alternate between sitting and standing, he is limited to only occasional climbing, stooping, crouching, balancing, kneeling and crawling, and he must avoid concentrated exposure to respiratory irritants. (TR 23-26). The ALJ concluded that Plaintiff is unable to perform his past relevant work but he is able to perform jobs that exist in significant numbers in the national economy. (TR 27-28). Consequently, the ALJ determined that Plaintiff has not been under a disability as defined by the Social Security Act since May 17, 2010, the date the application was filed.

## VI.      LAW AND ANALYSIS

## A.       Standard Of Review

4

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## B.      Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed

disabled.  20 C.F.R. § 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments.  *Id.* (citations omitted).

## C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing."  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff argues that the ALJ failed to properly assess the opinion of Dr. Edmonds, the State agency medical consultant, failed to base his RFC finding on substantial evidence, erred in his credibility assessment, and made an improper step five determination.

1.      *Evaluation of Medical Opinions*

Plaintiff argues that the ALJ's decision to accord little weight to the opinion of Dr. Charles Edmonds, M.D., a State agency medical consultant, was not supported by substantial evidence. Social Security Ruling 96-6p states that an ALJ must consider the findings made by State agency medical consultants regarding the nature and severity of an individual's impairments as expert opinion evidence of a nonexamining source. Although the ALJ is not bound by the findings made by State agency physicians, he may not ignore these opinions and must explain the weight given to the opinions in his decision. SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). The opinions of State agency medical consultants "can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, [and] the consistency of the opinion with the record as a whole...." *Id.*

Dr. Charles Edmonds completed an initial disability determination explanation on October 29, 2010 on behalf of Plaintiff in which he opined that Plaintiff was limited to performing sedentary work. (TR 64-72). Specifically, Dr. Edmonds found that Plaintiff could occasionally lift and carry ten pounds, frequently lift and carry less than ten pounds, stand and/or walk for a total of two hours, sit for a total of six hours in an eight hour workday, with only occasional climbing, stooping, kneeling, crouching and crawling. Dr. Edmonds stated that his conclusions were based on medical

evidence in the record that shows that Plaintiff has degenerative disc disease of the lumbar and cervical spine with chronic low back pain and referrals to neurology and the pain clinic. (TR 70). The doctor noted that at the time of his review the record did not contain an x-ray of the lumbar spine to show degenerative disc disease despite the fact that Plaintiff had complained of back pain for three years. (TR 66-67). He indicated that he could "live without the x-ray" because he believed the preponderance of the medical evidence pointed to a lumbar spine problem. (TR 66-67).

The ALJ addressed Dr. Edmonds's opinion, noting that the doctor found that Plaintiff would be able to perform the exertional requirements of sedentary work with the exception of some postural limitations. (TR 26-27). The ALJ determined that Dr. Edmonds's opinion was entitled to little weight because the doctor was not able to evaluate the credibility of Plaintiff's allegations of disabling symptoms, he did not have the benefit of the testimony at the hearing or of a full longitudinal picture of Plaintiff's impairments, and he did not have the benefit of medical evidence that was not before him during his review.

The parties argue and the record reflects that Dr. Edmonds did not review lumbar and cervical spine x-rays dated May 28, 2008. (TR 360-63). The examination of the cervical spine showed no acute fracture but narrowed interspaces at C3-4, C5-6 and C6-7, a small amount of posterior positioning of C5 on C6, and bilateral covertebral degenerative changes causing anterior neural foraminal encroachment at C5-6 and C6-7. (TR 360). The lumbar spine x-ray also showed no acute fracture, but mild degenerative changes with mild interspace narrowing at L2-3 and L3-4, with some mild convex left bending of the lumbar spine with a small amount of lateral offset at L2-3. (TR 362).

8

Dr. Edmonds also did not have the benefit of reviewing the November 2010 medical examination report of Dr. Kohl, one of Plaintiff's primary care physicians. (TR 364). Dr. Kohl's report was submitted to the State of Michigan Department of Human Services. In the report Dr. Kohl noted that Plaintiff was in mild distress from pain, which Plaintiff reported as a level eight on a ten point scale. The doctor documented that Plaintiff had paraspinal tenderness of the thoracic and lumbar spines with a decreased range of motion on extension and flexion. The doctor also documented that Plaintiff had a positive straight leg raising test bilaterally, worse on the right side, and opined that Plaintiff would be unable to sit for any amount of time because of pain. He also stated that Plaintiff would not be able to meet his needs at home.

The ALJ determined that Dr. Kohl's opinion was entitled to little weight because it was not supported by the objective evidence. Specifically, he found that Dr. Kohl's opinion that Plaintiff could not sit for any amount of time was not consistent with the objective evidence or with Plaintiff's assessment of his own functional limitations. He also found that Dr. Kohl's opinion was based primarily on Plaintiff's subjective complaints, which he found to be less than fully credible. The ALJ determined that Plaintiff's credibility with respect to his claims of disabling back pain was undermined by the fact that he was initially diagnosed with mild degenerative changes, he received only conservative treatment for his back-related issues, and he received no actual medical treatment after October 2010. The ALJ noted that while Plaintiff testified that he could walk only one block, the medical evidence showed that he could walk significantly farther than alleged, shedding doubt on the reliability of Plaintiff's testimony.

In addition to the above, the ALJ considered the other evidence of record. This evidence included the June 2, 2010 examination of Dr. Manuel Sklar, M.D. which showed that Plaintiff

reported with a chief complaint of back, neck and hip pain. Dr. Sklar's progress note states that Plaintiff had stable COPD and no hip tenderness, but he was positive for back and leg pain. (TR 226-27). The doctor reported that Plaintiff should continue on Albuterol, Advair, and Vicodin and schedule an appointment with neurology. He also recommended that Plaintiff should exercise and diet, noting that weight loss should help relieve Plaintiff's pain.

Next, the ALJ considered the June 23, 2010 examination performed by Dr. Gregory Berger, M.D., who noted that Plaintiff had no spinal tenderness and stable COPD. The doctor documented that Plaintiff would continue on Vicodin, Lyrica, ProAir and Advair and referred Plaintiff to a pain clinic specialist. (TR 223-24). The ALJ also reviewed the March 2010 examination of neurologist Dr. Agnes Jani-Ascadi, which showed that Plaintiff had mild tenderness on the left side of his cervical spine at C3-C5 with tenderness in the lower lumbar region. (TR 212-14). Dr. Jani-Ascadi observed that Plaintiff walks normally with caution and bending of his trunk forward, but otherwise he is able to perform heel, toe and tandem walking. The doctor noted that Plaintiff had full muscle strength in all extremities, normal tone and bulk, he could shrug his shoulders and rotate his head with good strength, but he had decreased sensation over the shoulder down to the arm, forearm and fourth and fifth digit mainly in the lateral side. The doctor noted that Plaintiff had mild to moderate control of his pain on pain medications.

The record shows that the ALJ reviewed the evidence and gave little weight to Dr. Edmonds's opinion that Plaintiff was limited to sedentary work. The ALJ clearly explained the weight he assigned to the opinion and the reasons behind his decision. He did not ignore the opinion of Dr. Edmonds. Although Plaintiff does not agree with the ALJ's treatment of Dr. Edmonds's

10

opinion, the ALJ was not bound by the doctor's opinion and his assessment is supported by substantial evidence.  The ALJ's evaluation of Dr. Edmonds's opinion should not be disturbed.

2.    *Assessment of Plaintiff's Credibility*

Next, Plaintiff argues that the ALJ's reasons for discrediting Plaintiff's testimony are not supported by substantial evidence.  It is well known that "[s]ince the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference."  *Casey v. Sec'y of Health & Human Servs,* 987 F.2d 1230, 1234 (6th Cir. 1993) (citation omitted). A finding that a claimant is not credible must be supported by substantial evidence in the same manner as any other ultimate factual determination.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements.  In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true.  When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

> . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.

S.S.R. 96-7p, 61 FR 34483, at 34485-86, 1996 WL 362209.  The assessment must be based on a consideration of all of the evidence in the case record, including

> Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

*Id.* at 34486.

11

The Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). In addition to the available objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ reviewed Plaintiff's testimony and other evidence of record and concluded that Plaintiff's allegations of disabling limitations were not supported by the record. The ALJ discussed evidence that showed that Plaintiff could walk significantly farther than he reported. In addition, the ALJ reviewed evidence that showed that Plaintiff was initially diagnosed with mild degenerative changes in the spine, he was subsequently assessed with mild tenderness of the cervical spine, his x-ray of the hip showed a normal hip joint, and he had full strength in all extremities. The ALJ noted Plaintiff's medications and considered his daily activities. He also referenced the conservative nature of Plaintiff's treatment, and inferred that there was a discrepancy between the treatment Plaintiff received and his stated limitations. In addition, the ALJ noted Plaintiff's noncompliance with medical treatment as evidenced by the fact that Plaintiff was noncompliant with his hypertension medication and he continued to smoke despite complaints of breathing difficulties and recommendations from his physician to quit. Although the ALJ acknowledged that Dr. Kohl

provided a statement to the State of Michigan Department of Human Services in November 2010 concerning Plaintiff's medical condition, he observed that there was nothing in the medical record to show that Plaintiff received actual medical treatment for his conditions after October 2010.

SSR 96-7p states that the ALJ may find the claimant's statements to be "less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for the failure." SSR 96-7p, 1996 WL 374186, at *7. *See also DeLong v. Comm'r*, No. 10-1056, 2013 WL 1309003, at *10 (W.D. Mich. Mar. 28, 2013) (observing that the ALJ may consider the claimant's failure to follow prescribed treatment in assessing whether the claimant is fully credible); *Godfrey v. Comm'r*, No. 10-13610, 2011 WL 3862395, at *4 (E.D. Mich. Aug. 12, 2011) (noting that an ALJ may consider the claimant's treatment noncompliance and receipt of conservative treatment when evaluating the claimant's credibility).

The ALJ considered appropriate factors, supported his credibility finding with substantial evidence, and provided a reasonable explanation for why he found that Plaintiff's testimony was not fully credible. The ALJ's credibility assessment should not be disturbed.

*3.     The RFC and Step Five Finding*

Next, Plaintiff argues that the ALJ erred in finding that Plaintiff was capable of performing light work and failed to sustain his step five burden of establishing that there is other work in the national economy that Plaintiff can perform. The RFC assessment is the Commissioner's ultimate finding about the claimant's ability to perform work-related activities. SSR 96-5p, 1996 WL 374183, at *5. It is defined as the most, not the least, the claimant can do despite his impairments. 20 C.F.R. § 416.945(a). The ALJ derives the RFC after considering the medical and other relevant

13

evidence in the record. He must support the RFC by including a narrative discussion describing how the evidence supports his conclusions and provide citations to the evidence of record. SSR 96-8p, 1996 WL 374184, at *7. In determining the RFC, the ALJ may adopt an opinion of a medical or nonmedical source in whole or in part if he finds that it is supported by and not inconsistent with the other substantial evidence of record. However, at all times the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an obligation to determine the RFC based on the evidence he finds credible.

Here, the ALJ reviewed and discussed the medical and nonmedical evidence of record. The ALJ found that the evidence showed that Plaintiff's impairments were not as disabling as Plaintiff alleged. He also gave good reasons for discounting the weight assigned to Dr. Edmonds's conclusion that Plaintiff was limited to sedentary work. The ALJ found that Plaintiff's treatment was conservative, the objective evidence showed that his back impairment was mild, and his breathing problems were stable and somewhat controlled with medication. He concluded that the limitation to light work with an option to sit or stand, along with postural limitations and a restriction requiring avoidance of concentrated exposure to respiratory irritants, takes into consideration Plaintiff's limitations, particularly his severe impairments of degenerative disc disease and COPD. Contrary to Plaintiff's argument, the ALJ's failure to include manipulative limitations in the RFC doe s not constitute reversible error in light of the fact that the ALJ cited evidence showing that Plaintiff had full muscle strength in all extremities and he testified that he could cook, clean, do laundry, drive a car, use a computer, and care for his personal hygiene. The ALJ based his conclusion that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy on VE testimony. Furthermore, the VE testimony was offered in response to

14

a hypothetical question that accurately portrayed limitations which the ALJ found to be credible. The undersigned finds that the ALJ appropriately articulated evidentiary support for the RFC and based his RFC determination and step five finding on substantial evidence in the record.

*4.    New Evidence*

Plaintiff states that he submitted records to the Appeals Council that were not before the ALJ. (Docket no. 8 at 8).  The records show that Plaintiff presented to Botsford Hospital Emergency Room in September 2011 complaining of a ten day history of breathing difficulties.  Plaintiff was intubated and admitted for a two week stay for acute exacerbation of COPD.  (TR 197-99).  The records show that Plaintiff was discharged in stable condition with the expectation that he would have future admissions due to his history of noncompliance and multiple medical co-morbidities, including continued heavy tobacco usage.

The Court cannot consider this evidence except in connection with a sentence six remand. Plaintiff has not requested a sentence six remand and, thus, has waived any such request.  *See Kennedy v. Comm'r*, 87 Fed. Appx. 464, 466 (6th Cir. 2003) ("issues which are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  Even if he had made such a request, he has not demonstrated that he is entitled to a sentence six remand.  To warrant remand back to the ALJ pursuant to sentence six of 42 U.S.C. § 405(g) the claimant must submit new evidence that is material and show good cause as to why the evidence was not presented at the prior proceeding.  To satisfy the materiality requirement the claimant "must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir. 1988) (citations omitted).

15

The evidence submitted to the Appeals Council is near in time but post-dates the ALJ's decision.  Therefore, the evidence is new and could not have been presented to the ALJ in time for the ALJ's August 2011 decision.  However, Plaintiff has not made any argument as to the materiality of the evidence or shown in any way that there is a reasonable probability that the ALJ would have reached a different disposition of Plaintiff's disability claim if presented with the new evidence.  The undersigned finds that a sentence six remand is not warranted for consideration of the evidence Plaintiff submitted to the Appeals Council.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and

16

labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court

determines that any objections are without merit, it may rule without awaiting the response.

Dated:  October 21, 2013          s/ Mona K. Majzoub_____
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE


**<u>PROOF OF SERVICE</u>**

        I hereby certify that a copy of this Report and Recommendation was served upon Counsel

of Record on this date.

Dated: October 21, 2013           s/ Lisa C. Bartlett_____
                                  Case Manager